## ESTATE INHERITED BY A WIDOW WHO DECLINED TO TAKE UNDER THE WILL.

Circuit Court of Cuyahoga County.

GEORGE MARCH, EXECUTOR OF THE WILL OF OTIS F. McCLENTIC, v. JENNIE McCLINTIC ET AL.

Decided, January 14, 1907.

*Wills—Where Widow Rejects Provisions of Will, Property Willed to Her is Not "Undisposed Of"—Widow Not Entitled to a Distributive Share in Proceeds of Real Estate Converted Into Personalty in Violation of Terms of Will.*

1. Where a testator has, by two different items in a will, made specific bequests to his widow, who is also his next of kin, and by a later item gives her an interest in all the residue of his estate not already disposed of by the will; upon the widow's election not to take under the will, the property specifically given to the widow by the first two items of the will is not thereby transferred to the class of property mentioned in the will as property not otherwise disposed of, but is to be treated as intestate property and as such inherited by the widow as next of kin.

2. A widow who has rejected the provisions made for her in her husband's will and elected to take under the law, is not entitled to a distributive share in the proceeds of real estate, which by the terms of the will was not to be sold until her death, but which, upon order of the probate court has been sold before that time.

MARVIN, J.; WINCH, J., and HENRY, J., concur.

This suit is brought under favor of Section 6202, Revised Statutes, and is for the purpose of obtaining from the court directions to the executor, for the disposition of the estate of the testator, now in his hands.

Otis F. McClentic, who was a resident of Cuyahoga county, Ohio, died testate on or about the 10th of June, 1904. He left no lineal descendant. The defendant, Jennie McClintic, is his widow. By his will, which was duly admitted to probate, the plaintiff was designated as executor, and letters testamentary were issued to him, under which he is now acting in the settlement of the testator's estate.

A considerable number of bequests of money are made in the will to designated persons, and these have all been paid out of the personal estate. There remains of the personal estate left by the testator about ninety thousand dollars. Besides this personal estate the testator left certain real estate, none of which came to him by descent, devise or by deed of gift from any ancestor, so that had he died intestate, the widow would have inherited all of such real estate, under Section 4159, Revised Statutes.

One tract of the above-mentioned real estate constituted the homestead of himself and his wife.

All of this real estate has been sold by the executor under an order of the probate court. It is suggested that there was no lawful authority in the probate court to order this sale, but in the view taken of the case, this is immaterial here.

Item 7 of the will reads:

"I give, devise and bequeath to my wife Jennie and her heirs the homestead in which I now reside, situate on the west side of what is called Franklin street in Chagrin Falls township, Cuyahoga county, Ohio, and is the same property purchased from Chas. A. Wales."

Item 8 of the will reads:

"I will, give and bequeath to my wife Jennie and her heirs all of the household furniture of every kind, nature and description contained in my house, or of which I may die possessed."

Item 9 of the will reads:

"For the purpose of furnishing and providing my wife Jennie with a home, care, comfort, support and maintenance, in such a way, manner, and at such place as she may choose and deem best during the remainder of her life, I give, devise and bequeath to my wife Jennie all of the residue and remainder of my property of whatever kind and wheresoever situate, and I hereby direct that she invest and keep invested in such safe and reliable interest-bearing securities as she may deem best, my personal estate, and at any time she deems best so to do is hereby authorized to change the securities or any part thereof in which she has invested any of my personal estate. I direct that my wife first use the interest and income arising from my personal and real estate for the purposes herein mentioned, and if from the remainder of my personal and real estate during her life the interest and income arising shall be insufficient for the purposes herein specified, then I hereby authorize and direct my wife to use such part or the whole of the remainder of my properties as she may deem necessary to fully carry out the purpose as herein specified and provided. It is my wish, and I so direct, that my wife fully and freely use and enjoy the use of the remainder of my property for the purpose herein specified without annoyance or hindrance of any person."

Item 10 of the will reads:

"At the death of my wife, any part of my estate mentioned in item IX herein, then remaining unconsumed by my wife, I direct my executor to convert into money and to distribute the same, share and share alike, between my nephews and nieces, the children of my brother, Franklin J., and of my deceased brothers, and sisters, to-wit: William, John, Charles, Albert Lucius, Martin, Lucinda and Abigal."

The widow rejected the provisions made for her in the will, and her rights are, therefore, fixed by Section 5964, Revised Statutes, which provides that where she fails to elect to take under the will, she shall retain her dower and such share of the personal estate of the deceased consort as she would have been entitled to by law, in case he had died intestate, by sections of the statute fixing the order of descent and distribution, in case of intestacy.

Attention is first called to item 7 of the will, already quoted.

It is clear that the widow takes nothing under this item, which in terms bequeaths to her the homestead. It is also true that

she takes nothing under item 8, which bequeaths to her all of the household furniture of every kind contained in the homestead.

What, then, is the status of the property described in these two items?

It is said in item 9, "I give and devise and bequeath to my wife, Jennie, all of the residue and remainder of my property of whatever kind, and wheresoever situated." This, followed by qualifying expressions as to such ownership as appears by the item already quoted.

What is the residue and remainder which is disposed of by item 9?

It is urged that it includes all the property which is not taken under either of the preceding items, and that, as the widow declined to take under the will, she takes nothing under item 7 or item 8, and therefore this residue and remainder includes the property mentioned in those two items. We think otherwise. It would seem clear that all which the testator intended to have included in this ninth item is that which had not, by previous items of the will, been cared for out of the estate for particular purposes, and from this it follows that as to the property named in items 7 and 8 the rights of the parties are just what they would have been if he had died intestate; and so the widow, as next of kin, and by inheritance, not by will, becomes the owner of the homestead and the household furniture.

If there were doubt as to this being the true construction, it would have to be resolved in favor of the widow, as heir, upon the doctrine that words of doubtful meaning in a will are to be construed most favorably to the heir. See *Davis* v. *Davis, Executor, etc., et al,* 62 O. S., 411.

From the syllabus:

"1. When a residuary clause in a will admits of a limited application as well as one of more general character it should be given that construction which will be most favorable to the heir-at-law.

"2. The rule which adopts a construction more favorable to the residuary legatee with respect to void or lapsed legacies than is applied with respect to void or lapsed devises, does not obtain in this state. The will should be construed, in either

case, so as to give effect to the intention of the testator as fairly ascertained from a consideration of all its provisions and his situation at the time of its execution.''

By referring to the tenth item of the will, above quoted, it will be seen that upon the death of the widow the executor was to convert all the property into money and make distribution as provided in this item. The widow having rejected the provisions made for her in the will, thereby rejects the trust provided for in the ninth item of the will, but she does not thereby hasten the time when the conversion and distribution is to be made. This conversion, however, as has already been said, has been made by the sale of the real estate, upon the order of the probate court, and it is urged upon the part of the widow that such conversion having been made, she is entitled, taking under the law, to have the avails of the conversion of this real estate treated as personal property in the distribution to be made.

In support of this attention is called to the case of *Hutchings* v. *Davis, Executor,* 68 O. S., 160. In that case no provision whatever was made for the widow. In fact, the will was made before the marriage of the testator to the woman who became his widow at the time of his death. One of the provisions of that will reads:

''The Enterprise Mills, my interest in the business of Stoneman & Hutchins, with what real estate is not sold of any and all kinds, shall be disposed of, and business settled up, if possible, within two years of my death.''

It was held that this constituted an equitable conversion of the real estate into personalty, taking effect from the death of the testator.

The fourth clause of the syllabus reads:

''The positive direction by a testator to sell all of his real estate and to blend the proceeds with his personal property in one fund for the distribution of his whole estate according to the scheme of the will, makes an absolute conversion for all purposes into personal property, which should be distributed as personal property, even if the special object intended by the testator should fail. And the effects of the conversion extend to,

and may be claimed, not only by those who claim under or through the will, but also by those who are not entitled under the will, but are entitled directly from or under the testator.''

An examination of this case shows that the equitable conversion of the realty took place because the testator by his will directed it to be done by his executors and blended it with his personal estate for distribution.

In the present case the testator contemplated and directed the conversion of this property, this real estate, only upon the death of his wife.

Section 1162 of Pomeroy's Equity Jurisprudence reads:

''The instrument might in express terms contain an absolute direction to sell or to purchase at some specified future time, and if it created a trust to sell upon the happening of a specified event which might or might not happen, then the conversion would only take place when the event happened, exactly as though there had been an absolute direction to sell at that time.''

Here, although there is no specified time at which the conversion was to take place, there is an event, to-wit, the death of the widow; certain it is true to take place at some time, but no conversion is to be made until the happening of that event.

If the intention of the testator had been carried out, by the acceptance on the part of the widow of the provisions made for her, she could never have had any part of the avails of the sale of the real estate. If the testator had died intestate, she would have had nothing in this real estate but dower. Her rejection of the provisions made for her in the will did not necessarily expedite the time when this conversion should have been made, and certainly it would have been wrong to those to whom distribution is to be made, after her death, to hold that because, as a matter of fact, the real estate has been sold under an order of the probate court, the distribution of the avails of such sale is expedited in such wise as to increase the amount for the widow and thereby decrease the amount for those to whom distribution is to be made, as provided in the will. We hold, therefore, that the widow is not entitled to distribution out of the avails of the sale

of this real estate.   She is entitled, of course, to the avails of her dower interest in all of the real estate except the homestead.   As to that, she is entitled to all of the avails of the sale, because the property was hers by inheritance.

The claim is made as against the widow, that because of her rejection of the provisions of the will she has lessened the amount which would ultimately come to the distribution and that she should not have a liberal construction of the will made in her favor.   Holding as we do in the case, however, this could affect only the matter of her having the entire avails of the sale of the homestead, because we hold that she gets no distributive part of the avails of the sale of the other real estate.   But it is not at all clear, that the distributees, upon final distribution will receive less than they would, if the widow had accepted the provisions of the will.   Had she done so, she would have been entitled to the entire income of the property mentioned in item 9, and might have diminished the principal.   Her age is said to be about 51 years.   With her expectancy of life, it is probable that the portion of the estate which will be left in the hands of the trustees to be distributed at the time of her death will be as great as it would have been had she accepted the provisions of the will.

The only ground upon which the widow can claim distribution of the avails of the sale of the real estate is that there was an equitable conversion of the real estate, taking effect at the time of the death of the testator, because of the provisions in the will that there should be a conversion at the death of the widow, and this would result in saying that the widow is to have a distributive portion of a fund that was not to be in existence until after her death.   This is manifestly untenable.

If all the parties who might be entitled to distribution under item 10 of the will, were now in being, it might well be said that the trust provided for in item 9 of the will would be a dry trust, and that there would, therefore, be no reason for continuing it. But the provisions made for distribution at the termination of this trust includes, "the children of my brother Franklin J."

All other distributees are mentioned by name, but the distribution is to be per capita, and since it is to include the children

of Franklin J., and it can not now be known whether children will hereafter be born to Franklin J., it can not be known to whom, when, and to how many distribution will have to be made when this trust ends, and so this trust must be continued. And for that purpose the probate court will doubtless, upon application, appoint a trustee; very likely the testator's executor may be appointed as such trustee, but since duties are required of the trustee in the matter of investing funds, and the like, which the executor as such can not do, it would be better, perhaps, that some other person than the executor be appointed trustee. It will be necessary however that a trustee be appointed.

The executor is directed, therefore, to pay to the defendant, Jennie McClentic, all the avails of the sale of the homestead, and her distributive portion, as provided by statute, out of the personal property, not including the avails of the sale of the real estate, and to pay to the proper trustee, when appointed, all the remainder of the property in his hands for distribution.